WILLIAM MOKAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MAD GREEKS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mokas v. Commissioner
Docket Nos. 13704-85, 13705-85.
United States Tax Court
T.C. Memo 1987-273; 1987 Tax Ct. Memo LEXIS 273; 53 T.C.M. (CCH) 969; T.C.M. (RIA) 87273; June 2, 1987. Sheldon Tabb, for the petitioner. Russell K. Stewart, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Section 6653(b) [1]
Petitioner
Year
Deficiency
Addition to tax
William Mokas [2]
1978
$28,226 $14,113  1979
13,909
6,955
1980
6,069
3,035
Mad Greeks, Inc.
1980
16,869
8,435
*274 After concessions, the only issue is whether petitioners had unreported taxable income in the amounts determined by respondent. [3]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits associated therewith are incorporated herein by reference. Petitioner William Mokas ("Mokas") resided in Philadelphia, Pennsylvania at the time his petition was filed. The principal office and place of business of petitioner Mad Greeks, Inc., a Pennsylvania corporation, was also located in Philadelphia at the time its petition was filed. From 1974 to March 10, 1980, Mokas, as a sole proprietor operated in Philadelphia a pizza and *275 sandwich restaurant known as the "Mad Greek." Several coin-operated vending machines were also located on the premises during 1978 through 1980 and a portion of the vending receipts was paid to the restaurant operator by the owner of the machines. On March 10, 1980, Mokas incorporated the business under the name "The Mad Greeks Inc." ("the corporation") and at all relevant times he was its president and principal stockholder. In April 1980, Mokas and Ahmed Shreim agreed to jointly manage the restaurant as employees of the corporation. Under the agreement each of them was to receive a salary from the corporation. In addition, Shreim was to receive an unspecified amount of stock in the corporation. Shreim worked at the restaurant through the end of 1980. During this period he received a salary but did not receive any stock until a later year. During the years 1978 through 1980 Mokas and certain employees under his direction maintained two sets of books for the restaurant. In one set both the gross receipts and the expenses of the business were understated. The tax returns of both petitioners for 1978, 1979 and 1980, both individually and corporate, were prepared from this set *276 of books. The second set of books reflected substantially greater receipts and expenses for the business. Mokas and his wife filed joint income tax returns for 1978, 1979 and 1980. On each of these returns Mokas caused the gross receipts from the restaurant to be understated and omitted altogether the commission income received from the vending machines. In a similar manner gross receipts from the restaurant were understated and commission income omitted from the corporate petitioner's return for 1980. [4]
In 1974 Mokas was indicted in the United States District Court for the Eastern District of Pennsylvania for attempting to evade individual income taxes for 1978, 1979 and 1980 in violation of section 7201; for making false statements on the individual *277 returns for such years in violation of section 7206(1); and for aiding and abetting in the preparation of a false income tax return for the corporation for 1980 in violation of section 7206(2). In September 1984 Mokas pleaded guilty to filing false returns for 1980, both individually and for the corporation, in violation of section 7206(1). OPINION Even though the parties have stipulated the amounts of gross receipts earned by the restaurant from sales and the vending machines, petitioners contend that the deficiencies are excessive for two reasons. First, both petitioners claim that they had deductible expenses in excess of those allowed by respondent. Secondly, Mokas contends that he should not be charged with the net income earned by the restaurant during a ten-week period in 1980 because he did not operate the restaurant during this period but leased it to other individuals. With respect to their claim for additional expenses, petitioners rely on the testimony and reports of Leopold Galliera, a certified public accountant, who was employed by petitioners to reconstruct the net income of the restaurant for the years 1978 through 1980 from receipts, cancelled checks, bank *278 statements, and other original records instead of from either set of the books maintained by Mokas. In his computations, Galliera first determined the corporation's gross receipts and expenses for 1981 because he concluded that the records available for this later year were more complete and more reliable than the records available for the earlier years. He then compared the ratio in 1981 of gross receipts to the various categories of expenses which he could document for 1981 to similar ratios for each of the years 1978 to 1980. From these comparisons, Galliera concluded that the expenses he could document for certain categories in 1978, 1979, and 1980 were low. For example, according to his computation the restaurant had gross receipts in 1981 of $239,135 and documented costs of goods sold of $127,649 for a ratio of 1.8 to 1, whereas in 1979 gross receipts were $291,329 and documented costs of goods sold were only $39,649 for a ratio of about 7.4 to 1. While we are impressed with the work done by Mr. Galliera, we are unable to adopt his conclusions for two reasons. First, his classification of various items of expense including costs of goods sold differed from the classification *279 used in respondent's computation. As a result, we are unable to agree with his conclusion that some categories of expense in the earlier years were out of line with the same categories of expense in 1981 because the difference may be due in whole or part to the difference in classification. Secondly, the documented expenses seem low under Galliera's analysis in large part because he used gross receipt amounts greater than the amounts on which the deficiency was based. Consequently, after carefully reviewing Mr. Galliera's testimony and reports we are not convinced that petitioners are entitled to any adjustment to the expenses allowed by respondent which are based upon the expenses reflected in the second set of books with upward adjustments for certain unrecorded expenses respondent was able to verify by notations made by Shreim or by receipts or other documents of third parties. With respect to Mokas' argument that an adjustment should be made for a period or periods during which he leased the business to other parties we are unable to find from the record as a whole that any such leases ever occurred or if they did occur the manner and the extent to which such arrangements caused *280 respondent's determination to be erroneous. Therefore, on this record we are unable to find any basis for making such an adjustment. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. Although the notice of deficiency in docket No. 13704-85 was addressed to William Mokas and his wife, Tina, the petition was filed only in his name.↩
3. The additions to tax for fraud under section 6653(b) were determined to be due from William Mokas only and he has conceded this issue.↩
4. A summary of the amounts reported and unreported by petitioners, as agreed to by the parties is set out below: ↩
Unreported
Reported
Unreported
Commission
Petitioner
Year
Receipts
Receipts
Income
Mokas
1978
$45,192.70
$170,943.30
$7,046.74
1979
58,130.70
233,198.30
19,753.76
1980
15,365.35
41,279.65
5,720.38
Mad Greeks. Inc.
1980
51,159.70
166,874.30
20,460.18